**FIRST NAT. BANK OF BRENHAM v. SCHAER.**

No. 2923.

Court of Civil Appeals of Texas. Beaumont.

April 23, 1936.

Rehearing Denied April 29, 1936.

Hodde & Bouldin, of Brenham, for appellant.

Albert Stone, of Brenham, Mathis Thomas & Glover, of Houston, and Jno. M. Mathis, Sr., and R. E. Pennington, both of Brenham, for appellee.

O'QUINN, Justice.

Robert Schaer sued the First National Bank of Brenham alleging that he was the owner and holder of a certain instrument in writing, in words and figures, as follows:

of cotton from W. E. Schaer & Co. for the price of $2,628.30, and that W. E. Schaer & Co. executed the above instrument (bill of exchange) which evidenced the sale of cotton by W. E. Schaer & Co. to W. A. Weimann. That said bill of exchange was accepted by Weimann on the date of its execution upon the faith of which Schaer & Co. shipped the 37 bales of cotton represented by said bill of exchange to Frieson & Co. at Houston, Tex., for the account of Weimann. That said 37 bales of cotton, together with 15 other bales, were sold for $3,705.44, which sum of money was paid by Frieson & Co. to appellant, First National Bank of Brenham, and that said bank received said money and appropriated same to its own use and benefit. That on November 10, 1934, appellee presented said bill of exchange to appellant bank and it paid to him the sum of $2,628.30, and he thereby parted with the title to the said 37 bales of cotton and the title to same was thus transferred to appellant bank. That on said November 10, 1934, appellee deposited with said bank the sum of $2,628.30, paid him for said bill of exchange, and thereafter he made demand upon appellant for said $2,628.30

"The First National Bank        No. 3463

"Brenham, Texas, 10–31, 1934

"60 Days After Date

"Pay to the Order of The First National   Bank, Brenham, Texas, $2,628.30

Accepted 10-31-1934
W. A. Weimann
Bill of Exchange

"W. A. Weimann
  –cotton–     $2,628 Dol's 30 Cts       Dollars

"For 29 B. C.

"Value Received and Charge to

Account of

"To W. A. Weimann

"Brenham, Tex."

~~B L Attached~~
~~Tickets Attached~~

{ W. E. Schaer & Co.
  Seller
  C. E. S."

He alleged: That said instrument was commonly known as a "bill of exchange." That it represented the title to the cotton as expressed upon its face. That the clause "For 29 B. C." was a mistake mutually made by W. A. Weimann and W. E. Schaer & Co. That in truth and in fact it represented the title to 37 bales of cotton, the purchase price of which was $2,628.30. That on October 31, 1934, W. A. Weimann of Brenham, Tex., was then and for many years had been engaged in the purchase and sale of cotton, and that on said date he purchased said 37 bales

so deposited, which was refused, and that appellant had ever since refused to pay to him said money or any part of same. That by reason of the premises appellant was indebted to him in the sum of the purchase price of his said cotton, the amount of said deposit, for which he prayed judgment.

The defendant bank answered by general demurrer, special exceptions (a) that plaintiff failed to allege that W. A. Weimann, the acceptor of the bill of exchange, had money on deposit with the bank at the time the bill of exchange was pre-

sented for payment, or at the close of business hours on said day, sufficient to cover same; (b) plaintiff failed to allege in his petition what interest he had in the bill of exchange, or what right he had to bring suit thereon; (c) that plaintiff's suit was not based upon the bill of exchange set out, but on a deposit slip alleged to have been given by defendant bank for the bill of exchange, and said deposit slip was in plaintiff's possession and should have been set out in the petition to advise defendant bank what it was called upon to answer. It further answered by general denial, and, answering specially, that it had for a number of years been engaged in the banking business in Brenham, Tex., and that W. A. Weimann had for some years been engaged in buying and selling cotton. That in handling the bill of exchange it followed the general custom in use in handling checks, drafts, and bills of exchange, that is, if the person drawing the check or draft or bill of exchange, or the person accepting a bill of exchange, had money in the bank at the time such instrument was presented for payment, or at the close of business hours of that day, then such paper would be paid. That if the bank had given tentative credit in a passbook, or on a deposit slip when the instrument was presented, and at the end of business hours of that day the party giving the check or draft, or accepting the bill of exchange, did not have on deposit money in the bank to pay same, then the bank had the right to cancel the deposit slip that had been tentatively given, and to charge the amount so credited back to the party to whom the credit had been given. That when the bill of exchange was presented to it by plaintiff, it did not in fact pay plaintiff any money, but gave him a tentative credit for the amount thereof on a deposit slip delivered to plaintiff, and that said deposit slip so delivered at the time had printed on it the terms under which it was issued, which were that the deposit slip was issued for such check, draft, or bill of exchange on condition that the party drawing such check, or draft, or accepting such bill of exchange, had funds in said bank during the day or at the end of business hours of that day sufficient to pay such check, draft, or bill of exchange, and that the bank as such was merely acting as agent for the customer and assumed no liability. That the deposit slip so given to plaintiff had said conditions printed thereon and con-

stituted the contract between them and plaintiff accepting same was bound by its terms, and the party issuing the bill of exchange, nor the party accepting same, not having at the time same was presented for payment funds in said bank to pay same, and at the closing of business hours of that day not having furnished such funds, it had the right to return said bill of exchange and charge the deposit back to plaintiff. Other defensive matters were pleaded, but it is not necessary to mention them.

The case was tried before the court without a jury. The court did not pass upon defendant's demurrers when presented at the opening of the case, but carried them along with the case, and at the conclusion of the evidence overruled all of the demurrers, and rendered judgment for plaintiff, appellee, in the sum of $2,628.30 with interest thereon from the date the bill of exchange was presented, and the deposit slip given. The bank brings this appeal.

We think the court erred in overruling appellant's demurrers challenging the sufficiency of appellee's petition in that it shows that the bill of exchange, the instrument upon which the suit is based, was drawn by W. E. Schaer & Co. and accepted by W. A. Weimann, and appellee failed to allege what interest he had in said bill of exchange, or how same came into his possession, or what right he had to bring suit thereon.

As shown by appellant's bill of exception No. 1, fully approved by the court, among the reasons urged for sustaining its general demurrer, was that appellee's petition did not show that he was a party to the bill of exchange, nor how it came into his possession, nor what interest he had in same, all of which was necessary to authorize him to maintain his suit. This same objection to the petition was also raised by appellant's special exception, as shown by its bill of exception No. 2. The court overruled these demurrers, and appellant assigns error against this ruling.

The record discloses that W. E. Schaer & Co. was a firm composed of W. E. Schaer, Carl Schaer, and Fred Schaer, three brothers of appellee, Robert Schaer. They were engaged in the general merchandise business at Sealy, Tex., and bought and sold cotton. Robert Schaer, appel-

lee, is not shown to have had any connection with or interest in the business activities of W. E. Schaer & Co. He lived at Chapel Hill, Tex., and was engaged in the general merchandise business, bought and sold cotton, and was president of the bank at Chapel Hill doing a general banking business. The bill of exchange was not the original property of Robert Schaer, nor was it indorsed to him, and there was neither pleading nor evidence to show that it was assigned to him. It was payable to order, and, under section 30 of article 5934, R.S.1925, for it to have been negotiated and have become the property of Robert Schaer, and thus have given him the right to maintain suit on same, it must have been indorsed by the holder and delivered to him. His petition made no such allegation, nor in any way did it allege the manner of its acquisition by him. But it is insisted by appellee that he did allege that he was the owner and holder of the bill of exchange, and that this was sufficient. We think this contention is without force. The statute, supra, plainly provides the method of transferring such negotiable instruments, and the instrument itself shows no compliance therewith. The mere allegation of ownership was not sufficient.

Appellee contends that the allegation that he was the owner and holder of the bill of exchange, under section 51 of article 5935, and section 191 of article 5948, R. S.1925, authorized him to maintain the suit. We do not think so. Section 51 of article 5935 merely provides that "the holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument." Section 30 of article 5934 provides that a negotiable instrument "if payable to order it is negotiated by the indorsement of the holder completed by delivery." This provision of the Negotiable Instrument Act preceding section 51 of article 5935 of said act should be held to be considered in connection with said section, and to mean that the indorsee in possession of the instrument may sue on same in his own name. Article 5948 of the Negotiable Instrument Act consists of general provisions. Section 191 of said article merely defines certain terms used in commercial transactions. It defined "holder" as the "payee" or "indorsee" of a bill or note who is in possession of the instrument. It is not contended that appellee was either the

"payee" in or the "indorsee" of the bill of exchange in question. Neither of these sections support appellee's contention, nor give him any authority, under the allegations of his petition, or the contents of the bill of exchange, to sue for recovery on same.

Appellee insists that he did not sue on the bill of exchange, but that he sued to recover money deposited with appellant evidenced by a deposit slip, and which appellant refused to pay to him. It is true that appellee does allege that he presented the bill of exchange to appellant and that appellant received same and gave him a deposit slip for the amount of the bill of exchange, and thus became owing appellee the amount shown by the deposit slip. However, the facts are that appellant when it received the bill of exchange did not pay him any money, but tentatively credited him with the amount thereof, that is, it issued to him its deposit slip in terms and in accordance with the customary way of transacting such banking business, and that the deposit slip contained printed on its face the following:

"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

Appellee by his own testimony was a banker of years experience, and so must be held to have known of the business custom relied upon by appellant in accordance with which it had the instant transaction with him, and it must be held that when appellee delivered the bill of exchange to appellant and took from it its deposit slip representing the deposit of the amount called for in the bill of exchange, he did so with full knowledge of the conditions set out on the face of the

deposit slip and consented to same. It appears without dispute that appellant on the evening of the day of the deposit endeavored to find appellee in the city of Brenham, but could not, and that it by that day's registered mail returned to appellee the bill of exchange with notice of the canceling of the deposit and the charging back of the amount credited with full explanation of the matter. This was in strict accordance with the contract evidenced by the deposit slip. So, if it be conceded that appellee's suit was to recover the amount of the deposit as for cash, still the particulars of the transaction and the issuance by appellant and the acceptance by appellee of the deposit slip all together constituted the whole transaction and manifested the intent of the parties, and the understanding by virtue of which the transaction took place, and the conditions under which they would be bound. Plainly under the facts and the deposit contract appellant was authorized to return to appellee the bill of exchange, and to cancel the deposit credit given by virtue of same.

From what we have said, it follows that the judgment of the trial court should be reversed and judgment here rendered for appellant, which is accordingly done. Reversed and rendered.