ROBERT SCHAER V. FIRST NATIONAL BANK, BRENHAM, TEXAS.

No. 7126. Decided February 1, 1939.
Rehearing overruled March 1, 1939.
(124 S. W., 2d Series, 108.)

*Albert Stone, Jno. M. Mathis* and *R. E. Pennington,* all of Brenham, and *Rosser Thomas,* of Houston, for plaintiff in error.

Where a case is reversed because the lower court improperly overruled a general demurrer special demurrers or exceptions the cause should not be rendered but should be remanded if there is any possibility that the plaintiff should by amend-mend supply the deficiency complained of in the demurrer and exceptions. Associated Oil Co. v. Hart, 277 S. W. 1043; Lockwood and Manning v. Brownson, 53 Texas 523; Dyess v. Davey Tree Expert Co., 44 S. W. (2d) 912.

Where a bank receives from a drawee a genuine check, drawn upon itself by a customer, as a deposit, it becomes at once the debtor of the depositor for the amount; and a subsequent return of the check to the depositor, even within an hour, as not good because the drawee's account was overdrawn, will not relieve it from liability for the amount. First Natl. Bank v. Burkhardt, 100 U. S. 686, 25 L. Ed. 766.

*W. W. Searcy* and *A. W. Dodde,* of Brenham, for defendant in error.

The holding by the Court of Civil Appeals that the deposit transaction was conditional has been declared to be the law by the courts of this State. Humble Oil Co. v. Wichita State Bank, 11 S. W. (2d) 545; Rogers v. Farmers Bank 264 S. W. 492.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This is a suit by Robert Schaer as plaintiff against the de-

fendant, First National Bank of Brenham, Texas; for $2628.30. Upon trial without the aid of a jury a judgment was awarded in Schaer's favor against the bank for the amount sued for. Appeal to the Court of Civil Appeals resulted in a reversal of the trial court's judgment and a rendition of judgment in favor of the bank. 94 S. W. (2d) 272. Writ of error was granted upon Schaer's application as plaintiff in error.

Schaer's first allegation upon the merits of the case is that on October 31, 1934, he was the owner and holder of an instrument designated as a "Bill of Exchange." The instrument, which was set out in full in the petition, reads:

"The First National Bank            NO. 3463
        "Brenham, Texas, 1031, 1934

"60 Days after Date

"Pay to the Order of The First National Bank, Brenham, Texas, $2,628.30.

"W. A. Weimann

     -cotton-      $2,628 Dol's. 30 Cts      Dollars

"For 29 B. C.      (B. L. Attached

"Value Received and Charge to      (Tickets Attached

"Account of

                        (W. E. Schaer & Co.

"To W. A. Weimann      ( °     Seller

                        (      C. E. S."

"Brenham, Texas."

*(margin:* Accepted 10-31-1934 W. A. Weimann Bill of Exchange*)*

It is alleged concerning the instrument that it was executed by W. E. Schaer & Company and evidenced a sale of cotton by the company to W. A. Weimann made on the date of its execution for a purchase price of $2628.30; and is alleged in this connection that Weimann had been for many years engaged in the purchase and sale of cotton, and on the date evidenced by the instrument purchased 37 bales of cotton for which the bill of exchange was issued; that Schaer & Company upon the faith of the instrument and the instruction of Weimann shipped the cotton to Frierson & Company of Houston for Weimann's account; that the amount of the purchase price of the Schaer cotton covered by the bill of exchange was paid by Frierson & Company to the bank. There were allegations concerning other cotton handled in connection with the 37 bales, and concerning a mistake in noting on the bill of exchange an incorrect number of bales, but it is not necessary that they be further referred to.

Schaer further alleged among other things not necessary to state that on November 10, 1934, he presented the bill of ex-

change to the bank *"the defendant herein upon which * * * said bill was drawn, and that defendant paid to plaintiff the sum of $2628.30 * * *; that he made a deposit of said sum * * * paid to him as the purchase price of said bill of exchange and cotton * * *."* (Italics ours.) He further alleged his subsequent demand upon the bank for the amount deposited, and the bank's refusal to pay.

The bank in addition to a general demurrer and numerous special exceptions pleaded a general denial and special defenses. The principal defense appears to be that the bank followed what it alleged to be "the general custom in use in the country" of giving tenative credit in a pass book or on deposit slip for the amount of "checks, drafts and bills of exchange presented for collection" and of exercising the right to cancel the deposit slips tentatively given, and of charging "the same to the party to whom the tentative credit had been given."

The trial court after awarding judgment in favor of Schaer filed findings of fact to the effect, so far as is material here, that W. A. Weimann & Company were cotton brokers of Brenham, Texas, and had been engaged exclusively in that business for a number of years; that Schaer Bros., a partnership, had been engaged in the general mercantile business at Sealy, Texas, and in buying cotton from the farmers of Austin County; that the way in which Weimann bought cotton, and had been buying it for several years, was by giving sixty day bills of exchange drawn on defendant bank; that there had never been a deviation from that rule; and "that the farmers take this bill of exchange to the First National Bank and the bank takes up the bill of exchange"; that Weimann carried an account with the bank and that during the time he had been doing business with the bank it had "cashed two or three million dollars of these bills of exchange," all of which were on "bank bills of exchange furnished by Weimann, and all drawn on" the bank; "that during all the years * * * none of them have ever been refused when presented for payment at said bank"; that about October 31, 1934, Schaer Bros. sold to W. A. Weimann 37 bales of cotton; that he issued the usual and customary bill of exchange in the sum of $2628.30 to Schaer Bros.; that Schaer Bros. was a partnership of which Robert Schaer is not a member, but that Robert Schaer was a banker at Chapel Hill and furnished the money to the firm for the payment of all cotton bought by them; that they paid the farmers with checks drawn on Robert Schaer at Chapel Hill

and that he paid the drafts and was the owner of the cotton; that Weimann & Company requested Schaer Bros. to ship the 37 bales of cotton together with fifteen other bales to Frierson & Company at Houston, which was done as requested, the shipper immediately forwarding to the company a bill of lading covering the shipment; that Weimann on the date the cotton was purchased drew a draft on Frierson & Company payable to the First National Bank of Brenham covering the shipment; that attached to said draft was a certificate showing the 37 bales of cotton that was bought from Schaer, and that about November 4th payment was made to and received by defendant bank; that about November 8th Weimann was indebted to the bank in the sum of about $40,000.00, and on that date made settlement with the bank and closed his account. The court further found that Robert Schaer on Saturday November 10th presented the bill of exchange to the bank; that the teller asked "Mr. Schaer how he wanted it and Mr. Schaer told him he could give him credit for it; that the teller at once issued him a deposit slip for $2628.30 and this amount was the correct figure of price for the 37 bales." The court also found that the deposit slip was given Mr. Schaer without any reservations or restrictions, and that as Mr. Schaer started out of the bank the teller called him back and asked him to sign a signature card so that the bank would know how to cash his checks.

The trial court concluded "the defendant bank accepted and paid off the bill of exchange covering the cotton in question" and that "this was a closed transaction between plaintiff and defendant," and further that "there is no proof authorizing a rescission of said transaction or cancellation of the payment made to plaintiff by defendant bank."

■ The bank contends that the transaction with Schaer did not amount to payment of the bill of exchange, but that in view of the printed matter on the back of the deposit slip given him by the bank the credit evidenced thereby was tentative only. It urges that in as much as Weimann at the close of business on the date of the deposit did not have funds in the bank sufficient to pay the bill of exchange it effectively cancelled the credit given and so notified Schaer and thereby relieved itself of liability.

The findings of the trial court were not excepted to in that court. They were not challenged as being without support in the evidence in the Court of Civil Appeals, or as having been made upon insufficient evidence. Nor did that court so hold.

There are findings of fact other than those received above,

but they are immaterial other than to show the notation on the back of the deposit slips above referred to and that the bank received the money on the cotton represented by the bill of exchange and took steps after the deposit made by Schaer to cancel it and returned the bill to him by mail with the statement that "at the close of business today Mr. Weimann has not yet arranged to take care of this item and has not deposited the receipts which the bill of exchange is to cover." The court found in this connection that prior to the time the letter was written Weimann had deposited the amount of the purchase price of the Schaer cotton with the bank and that the bank had credited the purchase price of the cotton on Weimann's indebtedness to it and that the certificate or receipt for the cotton had been deposited with defendant bank.

In fact the testimony of the officials of the bank is to the effect that the bank prior to sending the bill of exchange back to Mr. Schaer had received the money for the cotton in question and that Weimann's bill of exchange account in the bank had been credited with the amount. The cashier stated in his testimony that "we admit getting the money." The president of the bank testified also that Weimann under his arrangement with the bank paid it interest on the bills of exchange such as the one in question.

The bank does not allege or contend that it gave Mr. Schaer credit by mistake for the deposit made by him, or that it did so as a result of fraud practiced upon it. It contends that in accordance with the customary way of transacting the banking business in which it was engaged, "all items," as stipulated on the back of the deposit slip, "are credited subject to final payment in cash or solvent credits," and that "it may charge back any item at any time before final payment, * * * drawn on this bank not good at close of business on the day deposited"; that the item deposited by Mr. Schaer was a conditional deposit solely because of the stipulation on the back of the deposit slip and the fact that Weimann did not have funds in the bank to cover at the close of business hours; and that the bank relieved itself of liability by returning the bill of exchange to Mr. Schaer.

The bank's contention cannot be sustained. The trial court's conclusion of law was correct and the Court of Civil Appeals erred in reversing the judgment of that court.

■ The petition of plaintiff is good as against a general demurrer, which appears from the above summarization of its allegations. If there were any errors in overruling the special exceptions urged they are harmless. It is not material that

plaintiff did not allege that Weimann had money to cover the deposit made or what interest plaintiff had in the bill of exchange, or whether his suit was upon the bill of exchange or upon the deposit slip. Plaintiff alleged the deposit by him of the amount given by the bank in payment of the bill of exchange drawn upon it, and the credit to which he became entitled *by virtue of the deposit*. He did not sue upon the bill of exchange, but for the amount of the deposit. The provisions of the negotiable instrument act are therefore without application, and the Court of Civil Appeals erred in giving effect thereto. The facts relating to the transaction of the deposit and issuance of the deposit slip, and bearing upon whether under all the facts the absolute relationship of creditor and debtor was created between Schaer and the bank, are uncontroverted. They support the findings of the trial court that plaintiff deposited $2628.30 *paid to him as the purchase price of said bill of exchange and cotton*. Norton et al v. Mercantile Bank & Trust Co. of Texas, 51 S. W. (2d) 1062 and authorities there cited.

The court's findings foreclose the contention that the relationship of debtor and creditor was conditional, and establish that the bank under the facts in evidence became unconditionally indebted to Schaer at the time of the deposit transaction. The Court of Civil Appeals erred in holding *as a matter of law* that the deposit transaction was conditional and not a completed transaction, and in effect holding by its rendition of a judgment in favor of the bank that it relieved itself of liability by subsequently returning the bill of exchange to Mr. Schaer.

In view of the errors pointed out and in the light of the facts found by the trial court, and its conclusion based thereon, the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court February 1, 1939.

Rehearing overruled Mach 1, 1939.